524 So.2d 467 (1988)
Harold BOCLAIR, Appellant,
v.
STATE of Florida, Appellee.
No. 87-1267.
District Court of Appeal of Florida, First District.
April 26, 1988.
*468 Louis O. Frost, Jr., Public Defender, and James T. Miller, Asst. Public Defender, Jacksonville, for appellant.
Robert Butterworth, Atty. Gen., and Jeffery Dikman, Asst. Atty. Gen., for appellee.
MILLS, Judge.
Harold Boclair appeals from a final order of the trial court continuing his involuntary commitment following an adjudication of not guilty of arson by reason of insanity. We reverse and remand for further proceedings on the practicability of Boclair's conditional release.
After his May 1986 arrest on two counts of arson, Boclair's counsel filed with the court a suggestion of incompetence to stand trial and insanity at the time of the offense, pursuant to Rules 3.210 and 3.216, Fla.R.Crim.P. The court appointed Dr. Miller to examine Boclair, who returned a diagnosis of severe schizophrenia and opined that Boclair was incompetent to stand trial, was insane at the time of the offense and met the criteria for involuntary hospitalization. The trial court thereupon entered an order of commitment pursuant to Section 916.13, Florida Statutes (1985) and Rule 3.212(b)(1), Fla.R.Crim.P., committing Boclair to the Department of Health and Rehabilitative Services, which was to report within six months on Boclair's status.
In October 1986, the hospital at which Boclair was confined reported to the court that he had become competent to stand trial. The report noted Boclair's improvement while on medication but recommended strict monitoring based on Boclair's history of noncompliance with outpatient treatment, such as reliably taking that medication. Upon receipt of this report, the court appointed Drs. Miller and Krop to examine Boclair. Miller agreed with the hospital's assessment of Boclair's competence to stand trial, but opined that involuntary hospitalization was still warranted, based on Boclair's history of noncompliance with treatment, his absence of insight into his illness, his refusal to acknowledge his need for medication and treatment and his lack of motivation to follow through on that need. Dr. Krop concurred. Based on these reports, the trial court adjudicated Boclair competent to stand trial and thereupon adjudicated him not guilty of the arson offenses by reason of insanity. Boclair's involuntary hospitalization was also continued for a period not to exceed one year.
In May 1987, the hospital filed another report with the court stating that Boclair no longer met the criteria for involuntary hospitalization and recommended a hearing to determine whether he could be conditionally released. Although noting that Boclair had exhibited no evidence of disruptive, impulsive or aggressive acts, and had complied with his medication intake in a timely fashion and without prompting, the *469 report warned that, should Boclair be conditionally released, it was "imperative that he be strictly monitored in the community given his history of noncompliance with treatment." The court thereupon reappointed Drs. Miller and Krop to examine Boclair. Dr. Miller reported that Boclair still showed no insight into his illness and merited continued involuntary hospitalization. He elaborated in a later addendum, expressing concern over the presence of adequate mental health officials in Boclair's community of release, Jacksonville, who could supply the required strict monitoring recommended by the hospital report. Although agreeing with the need to maintain Boclair on medication and to follow him on an outpatient basis, Dr. Krop reported that Boclair no longer required hospitalization.
Prior to the hearing on Boclair's conditional release, the parties stipulated that no live testimony would be received but that the trial court would base his decision on the reports of the hospital and Drs. Miller and Krop. Boclair's counsel nevertheless requested a hearing at which Boclair could be given a chance to prove that he could comply with his treatment so as to warrant conditional release. The request was denied. Based on the hospital's warning of the necessity in Boclair's case for strict monitoring should he be released, and on Dr. Miller's report, the trial court found that Boclair had not met his burden to show that the preponderance of the evidence supported his release and entered the instant order of involuntary hospitalization for not more than one year.
It is clear from perusal of the hospital report and of the report of the two psychiatrists, which were the only evidence received by the trial court, that the only reason Boclair was found to continue to meet the criteria for involuntary hospitalization was that he could not guarantee that his illness, which had indisputably been placed into remission by his medication, would remain in remission while he was at liberty. The trial court relied solely on the opinion of Dr. Miller that the City of Jacksonville could not provide adequate supervision or monitoring to assure that Boclair would remain on his medication and therefore remain in remission.
A reading of this court's decision in Hill v. State, 358 So.2d 190 (Fla. 1st DCA 1978) is instructive in this case. In Hill, the defendant had been found not guilty by reason of insanity and involuntarily hospitalized. The evidence showed that at the time of the hearing on whether he still met the conditions for involuntary hospitalization, his psychosis was in remission and under medicinal control. As in this case, the evidence also demonstrated that, if released, the defendant would likely remain in remission if he continued to take his medication and regularly saw a doctor or a community mental health center. The trial court denied release, on the grounds that remission had occurred only by the use of regular medication and supervision, and that the loss of remission, by failure of medication or failure to take the medication would expose the public to danger. This court reversed, and presented an in-depth analysis of the standard of proof at similar hearings, as well as the burden and the quality of proof necessary for absolute or conditional release.
First of all, noted the court, proceedings in Florida for the release of insanity acquitees should be governed by whether, if released, the acquitee is likely to injure himself or others. The court placed the burden of proof under this standard on the acquitee, in that one who asserts mental irresponsibility for a crime should bear the burden of proving grounds for release by a preponderance of the evidence. Hill at 201. However, the court went on to note that the Hill acquitee was being denied liberty because he had not satisfactorily proved matters which in confinement he could not prove. The court pointed out that there was no evidence that the medication which had remitted defendant's illness would in another environment become impotent; that, as in this case, the hospital report demonstrated that the defendant had demonstrated as much responsibility and autonomy as he could in a confinement which required little of either; that the defendant took his medication as willingly *470 as he could will to take it under a regime that would enforce medication if he refused or neglected it; and finally that he was as receptive to counselling as he could be where he would get it whether he liked it or not. Nevertheless, stated the court, all of this evidence was worthless in the eyes of the trial court because the defendant could give no guarantee of continued remission of his illness. Hill at 203.
The court went on to state that the state cannot lawfully maintain a defendant in indefinite confinement after hospitalization has subdued and remitted his illness simply for the lack of a guarantee that, if given liberty, he would take his medication and submit to psychiatric observation. Hill at 204. Despite its earlier statement that the acquitee bore the burden of proof in these hearings, the court noted that "the burden of going forward with the evidence cannot and does not lie wholly with the committed acquitee. It is idle to speak of imposing the burden of proof, in the sense of a duty to produce all the convincing evidence, on one who is segregated from society because of mental illness." The court went on to hold that "the state's agencies, especially HRS and its hospital administrators, share with the patient the responsibility to acquire and produce the evidence. The court has the responsibility and authority to require that the evidence be brought forward." Hill at 208. The court proceeded to describe a factual situation similar to that found in the instant case.
When medical benefits from hospitalization have been substantially realized; when the acquitee remains incurably or residually ill; when the acquitee has obtained stable remission by care which is also available outside the hospital; and when the doubt concerning his nondangerousness is a product of his past violence and the incalculable risk he will lose remission while at liberty, the all or nothing choice between liberty and absolute confinement is a lottery in which either the acquitee's liberty or the public safety is often needless sacrificed. In those cases, the committing judge should consider releasing the acquitee on conditions reasonably calculated to monitor and assure his continued remission, reserving jurisdiction later to order, upon an appropriate hearing, absolute liberty or, again, absolute confinement.
Hill, at 209.
This suggestion by the Hill court has since been codified at Section 916.17, Florida Statutes (1985) which authorizes the committing court to order a conditional release of any defendant who has been committed according to an adjudication of not guilty by reason of insanity based on an approved plan for providing appropriate outpatient care and treatment. In its order of conditional release, the court is directed to specify the conditions of release based upon a release plan and shall direct the appropriate agencies or persons to submit periodic reports to the court regarding the defendant's compliance with the conditions of the release and progress and treatment.
The Hill court conceded that, if no conceivable conditional release plan is practical or reasonably calculated to achieve its purpose, owing to a defendant's peculiar disability or other circumstances over which the state had no control, continuing confinement could be ordered. But, stated the court, if the cause for concern, as in the instant case, is only that the state cannot or will not provide effective facilities or services which may reasonably be required, that failure cannot be seized on as grounds to deny an eligible acquitee his release. Hill at 211.
In this case, it can, of course, be argued that Boclair simply failed to come forward with proof addressing the trial court's concern that his continued remission by the taking of his medication could not be guaranteed. We also note that Boclair has a history of noncompliance with outpatient treatment, which the Hill acquitee did not have. However, as the Hill court noted, the state's agencies, especially HRS and its hospital administrators, share with the patient the responsibility to acquire and produce the evidence, in this case that adequate supervision cannot be provided. The state herein made no attempt to do so, relying only on the unsupported opinion of Dr. Miller in his report that adequate facilities *471 or personnel for supervision were not available. We find that, without a determination, based on adequate evidence, that indeed "no conceivable conditional release plan is practical or reasonably calculated to achieve its purpose, owing to [Boclair's] peculiar disability or other circumstances over which the state has no control", an order continuing Boclair's involuntary hospitalization is improper.
We therefore reverse that order, and remand for a further hearing. At that hearing, the court shall require the hospital administrator to produce a plan for providing Boclair appropriate outpatient care and treatment to include: 1) special provisions for residential care or adequate supervision of the defendant; 2) provisions for outpatient mental health services and 3) if appropriate, recommendations for auxiliary services such as vocational training, educational services, or special medical care. See Section 916.17(1)(a)-(c), Florida Statutes (1985). The court shall then proceed to receive evidence on the question of whether the plan is practical and reasonably calculated to achieve its purpose before again determining that Boclair meets the criteria for involuntary hospitalization.
SHIVERS and JOANOS, JJ., concur.