VAN NORTWICK, J.
Marcus Lamar Morrow seeks review of - the trial court’s denial of his petition for a writ of habeas corpus. Because the undis-. puted expert medical opinion in the record precludes Morrow’s involuntary commitment and because Morrow’s continued commitment was ordered without the benefit of an outpatient treatment plan, we reverse and remand for further proceedings.
We present the facts as asserted in Morrow’s habeas petition filed below. Morrow was arrested and booked into custody for failing to comply with sexual offender registration requirements. Morrow was deemed mentally incompetent to proceed and was remanded to the care of the Department of Children and Families (DCF) to restore his competency. Subsequently, Morrow was evaluated by two medical experts who each opined that Morrow had been restored to competency, but was legally insane at the time of the charged offense; that he did not meet the criteria for involuntary commitment; and that he should be conditionally released. Both ex *403 perts also recommended that Morrow be placed in an assisted living facility to ensure he continues to receive appropriate medication and treatment.
Based on the expert medical opinions, the trial court issued an order directing that Morrow be held in custody until an appropriate placement could be found for him. After a statewide search of assisted living facilities, however, no facility would accept Morrow, given his sexual offender status and lack of any source of income. In his petition for writ of habeas corpus, Morrow argued that under the circumstances, he should be released from custody, rather than continue to be held for an indefinite period.
In the order under review, the trial court denied habeas relief, finding “that there is -no current conceivable conditional release plan that is practicable or reasonably calculated to achieve its purpose owing to the defendant’s peculiar disability and other circumstances over which the state has no control,” and citing our decision in Hill v. State, 358 So.2d 190 (Fla. 1st DCA 1978). This appeal ensued.
Review of a trial court’s ruling on a petition for writ of habeas corpus “is limited to a determination of whether the circuit court afforded petitioner due process or departed from the essential requirements of law.” Edge v. State, 893 So.2d 610, 612 (Fla. 4th DCA 2005).
Section 916.106(7), Florida Statutes (2013), provides that DCF “is responsible for the treatment of forensic clients who have been determined incompetent to proceed due to mental illness or who have been acquitted of a felony by reason of insanity.” A “forensic client” includes one who has been committed to DCF custody under section 916.13(1). § 916.106(9), Fla. Stat.
Section 916.15 sets forth the process for the commitment of a defendant acquitted of criminal charges by reason of insanity:
(2) A defendant who is acquitted of criminal charges because of a finding of not guilty by reason of insanity may be involuntarily committed pursuant to such finding if the defendant has a mental illness and, because of the illness, is manifestly dangerous to himself or herself or others.
(3) Every defendant acquitted of criminal charges by reason of insanity and found to meet the criteria for involuntary commitment may be committed and treated in accordance with the provisions of this section and the applicable Florida Rules of Criminal Procedure. The department shall admit a defendant so adjudicated to an appropriate facility or program for treatment and shall retain and treat such defendant. No later than 6 months after the date of admission, prior to the end of any period of extended commitment, or at any time the administrator or designee Shall have determined that the defendant no longer meets the criteria for continued commitment placement, the administrator or designee shall file a report with the court pursuant to the applicable Florida Rules of Criminal Procedure.
(4) In all proceedings under this section, both the defendant and the state shall have the right to a hearing before the committing court_
Section 916.16 provides the trial court with continuing jurisdiction over a defendant it either involuntarily commits or places on conditional release pursuant to section 916.17. Section 916.17 mandates:
(1) Except for an inmate currently serving a prison sentence, the committing court may order a conditional release of any defendant in lieu of an involuntary commitment to a facility pursuant to s. *404 916.13 or s. 916.15 based upon an approved plan for providing appropriate outpatient care and treatment. Upon a recommendation that outpatient treatment of the defendant is appropriate, a written plan for outpatient treatment, including recommendations from qualified professionals, must be filed with the court, with copies to all parties. Such a plan may also be submitted by the defendant and filed with the court with copies to all parties. The plan shall include:
(a) Special provisions for residential care or adequate supervision of the defendant.
(b) Provisions for outpatient mental health services.
(c) If appropriate, recommendations for auxiliary services such as vocational training, educational services, or special medical care.
In its order of conditional release, the court shall specify the conditions of release based upon the release plan and shall direct the appropriate agencies or persons to submit periodic reports to the court regarding the defendant’s compliance with the conditions of the release and progress in treatment, with copies to all parties.
Related and overlapping with the dictates of sections 916.15 through 916.17 are Rules 3.217 and 3.219, Florida Rules of Criminal Procedure. Rule 3.217(b) provides:
When a person is found not guilty, of the offense or is found not to be in violation of probation or community control by reason of insanity, if the court then determines that the defendant presently meets the criteria set forth by law, the court shall commit the defendant to the Department of Children and Family Services or shall order outpatient treatment at any other appropriate facility or service, or shall discharge the defendant.
Rule 3.219 sets forth the procedure for developing an outpatient treatment plan, as follows:
(a) Release Plan. The committing court may order a conditional release of any defendant who has been committed according to a finding of incompetency to proceed or an adjudication of not guilty by reason of insanity based on an approved plan for providing appropriate outpatient care and treatment. When the administrator shall determine outpatient treatment of the defendant to be appropriate, the administrator may file with the court, and provide copies to all parties, a written plan for outpatient treatment, including recommendations from qualified professionals. The plan may be submitted by the defendant. The plan shall include:
(1) special provisions for residential care, adequate supervision of the defendant, or both;
(2) provisions for outpatient mental health services; and
(3) if appropriate, recommendations for auxiliary services such as vocational training, educational services, or special medical care.
In its order of conditional release, the court shall specify the conditions of release based on the release plan and shall direct the appropriate agencies or persons to submit periodic reports to the court regarding the defendant’s compliance with the conditions of the release, and progress in treatment, and provide copies to all parties. The procedure for determinations of the confidential status of reports is governed by Rule of Judicial Administration 2.420.
(b) Defendant’s Failure to Comply. If it appears at any time that the defendant has failed to comply with the conditions of release, or that the defendant’s *405 condition has deteriorated to the point that inpatient care is required, or that the release conditions should be modified, the court, after hearing, may modify the release conditions or, if the court finds the defendant meets the statutory criteria for commitment, may order that the defendant be recommitted to the Department of Children and Family Services for further treatment.
(c) Discharge. If at any time it is determined after hearing that the defendant no longer requires court-supervised follow-up care, the court shall terminate its jurisdiction in the cause and discharge the defendant.
In light of the expert medical opinions here, finding that Morrow did not meet the criteria for involuntary commitment, a finding unchallenged by any other evidence in the record, the trial court is precluded from validly ordering Morrow’s involuntary commitment. Compare Thurston v. Navarro, 546 So.2d 448, 449 (Fla. 4th DCA 1989) (granting petition for writ of habeas corpus and quashing involuntary commitment order where trial court rejected uncontroverted expert medical opinion testimony that defendant did not meet criteria for involuntary commitment). Indeed, the trial court seemed to recognize this circumstance when it noted in its order continuing custody, “[Morrow] appears stable at the current time and does not present as a significant risk to self or others.”
Under the circumstances and applicable statutes, the trial court had two remaining options available to it: order outpatient treatment or order discharge. See § 916.17; Fla. R. Crim. P. 3.217(b); see also Tavares v. State, 871 So.2d 974, 976 (Fla. 5th DCA 2004) (“If the defendant does not meet these criteria [for involuntary commitment], then the court must determine whether to discharge the defendant, or order the defendant to outpatient treatment at a specific appropriate facility”). By doing neither, the trial court departed from the essential requirements of the law, necessitating reversal of its order denying Morrow’s petition for habe-as relief and remand for further proceedings. See Edge, 893 So.2d at 612.
Given the medical opinions, however, the State’s and the trial court’s concerns over “releas[ing] defendant to wander Nassau County without any supervision or assistance,” are reasonable. Further, concern over the public safety, as well as Morrow’s personal welfare, are, from a common sense perspective if nothing else, legitimate factors that should be considered in reaching an ultimate resolution of this case.
Here, the record indicates that no release plan has been submitted. Under the applicable statutes and rules, however, a written release plan is a prerequisite for conditional or outpatient release under section 916.17 and Rule 3.219(a). Ideally, Morrow would be housed in a residential facility where he would continue to receive close psychiatric treatment and medication monitoring, as the medical experts recommend. Unfortunately, the record reflects that no facility has been found that is willing to accept Morrow.
Nevertheless, the trial court has broad discretion to set the terms of conditional release, which this Court described in Hill:
If on remand Judge Willis should find by these standards that conditional release is appropriate for Hill, by way of example, conditions for his release may conceivably be that he remain in his father’s household or under his father’s direct supervision, that he take the prescribed daily dose of Mellaril in the presence of a designated person, that Hill present himself weekly or at other intervals for psychiatric evaluation at a designated place, that he submit to examination at longer intervals at the *406 Florida State Hospital, and that he and witnesses appear before the court at still longer intervals at hearings for continuing evaluation. The order may contain appropriate directions to state health agencies concerning supervision and reports.
858 So.2d at 209-10.
The trial court retains jurisdiction over Morrow should he be conditionally released and may modify the release conditions or order involuntary commitment if Morrow’s status changes and in the future he meets the criteria for involuntary commitment. See §§ 916.16(2) and 916.17(2). If no suitable housing facility can be found, then Morrow’s continued medication and treatment must be ensured, as much as possible, by the type of periodic monitoring procedures described in Hill, in addition to any other safeguards that may be formulated when drafting a release plan.
On remand, the trial court shall order that Morrow’s counsel and DCF submit release plans or collaborate to submit a stipulated release plan. See Boclair v. State, 524 So.2d 467, 471 (Fla. 1st DCA 1988) (reversing order continuing involuntary commitment and remanding for further hearing at which “the court shall require the hospital administrator to produce a plan for providing Boclair appropriate outpatient care and treatment,” according to the dictates of section 916.17). Once a release plan or plans have been submitted, the trial court will at least have a starting point from which to proceed as required under section 916.17 and Rule 8.217(b) and may hold any hearings necessary to properly assess the efficacy of the proposed plan.
If the trial court is unable to order Morrow’s conditional release, however, then the only alternative available under the law is to discharge him. Despite the fact that this is a result that should be avoided for the saké of the general public and Morrow’s own well-being, it is one of the three outcomes plainly dictated by the Legislature, through statute, and the Florida Supreme Court, through the rules of procedure.
While the trial court patterned the language of the appealed order on a key passage from Hill, the entirety of the passage from which that language is drawn merits quotation here to place the language in its proper context:
If no conceivable conditional release plan is practicable or reasonably calculated to achieve its purpose, owing to the acquitee’s [sic] peculiar disability or other circumstances over which the state has no control, continued confinement may of course be ordered. But if the cause for concern is only that .the state cannot or will not provide effective facilities or services which may reasonably be required, that failure cannot be seized on as grounds to deny an eligible acqui-tee his unconditional release. To hold an insanity acquitee for an indefinite term of preventive detention, on the sole ground that he cannot guarantee his continued remission and the state refuses to provide reasonable measures to monitor and assure it, would render all the law’s antecedent acts[,] his acquittal for insanity, the order of commitment to secure a public necessity, the enforcement of standards for release and for proof, and the hearing on his release petition a farcical charade.
358 So.2d at 211.
Accordingly, we REVERSE the order on appeal and REMAND for further proceedings consistent with this opinion.
PADOVANO and MARSTILLER, JJ., concur.